1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALEX WOLF,

                Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

No. CV-13-00425-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 15, 20.) Attorney Dana C. Madsen represents plaintiff; Special Assistant United States Attorney Diana Andsager represents defendant. After reviewing the administrative record and briefs filed by the parties, the court GRANTS plaintiff's Motion for Summary Judgment and DENIES defendant's Motion for Summary Judgment.

## JURISDICTION

        Plaintiff Alex Wolf (plaintiff) protectively filed for supplemental security income (SSI) and disability income benefits (DIB) on September 13, 2012. (Tr. 39, 196, 203, 240.) Plaintiff alleged an onset date of September 1, 2009. (Tr. 39, 196, 293.) Benefits were denied initially and on reconsideration. (Tr. 149, 152, 158, 160.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Lori L. Freund on July 29, 2013. (Tr. 31-62.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 40-77.) Vocational expert Thomas Polsin also testified. (Tr. 77-87.) The ALJ denied benefits (Tr. 9-22.) and the Appeals Council denied review. (Tr. 1.) The matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

        The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 42 years old at the time of the hearing. (Tr. 76.) He has a GED and took some college classes for computer web design. (Tr. 68.) He has work experience as an apartment manager, auto repair service estimator, and a locksmith. (Tr. 79.) He testified that anxiety is his biggest problem. (Tr. 45.) He sometimes has shortness of breath and chest pain due to anxiety. (Tr. 75.) He has ADHD. (Tr. 48.) He has difficulty being around others. (Tr. 53.) He has depression. (Tr. 69.) He sometimes stays in bed for a couple of days at a time. (Tr. 69.) Plaintiff testified his low back, mid-back, and neck hurt. (Tr. 71.) He has muscle spasms between his shoulders. (Tr. 72.) Working with his right arm causes his back to go out. (Tr. 72.) Walking causes his low back to hurt. (Tr. 72.) He gets tension headaches a couple of times per week. (Tr. 71.) He has pain in his knees that feels like burning under his knee caps. (Tr. 73.) He has restless legs and has difficulty sleeping more than four or five hours. (Tr. 74-75.) He has a tumor in his pituitary gland that affects his growth hormones. (Tr. 75-76.) Plaintiff testified he has been clean and sober since 2007. (Tr. 49.) He was living in his car at the time of hearing. (Tr. 53.)

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

1    It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.

2    Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the

3    Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097;

4    *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by

5    substantial evidence will still be set aside if the proper legal standards were not applied in

6    weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*,

7    839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the

8    administrative findings, or if there is conflicting evidence that will support a finding of either

9    disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812

     F.2d 1226, 1229-30 (9th Cir. 1987).

10                               **SEQUENTIAL PROCESS**

11   The Social Security Act (the "Act") defines "disability" as the "inability to engage in any

12   substantial gainful activity by reason of any medically determinable physical or mental

13   impairment which can be expected to result in death or which has lasted or can be expected to

14   last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c

15   (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only

16   if his impairments are of such severity that plaintiff is not only unable to do his previous work

17   but cannot, considering plaintiff's age, education and work experiences, engage in any other

18   substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

     1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational

     components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

19   The Commissioner has established a five-step sequential evaluation process for

20   determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one

21   determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in

22   substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I),

     416.920(a)(4)(I).

23   If the claimant is not engaged in substantial gainful activities, the decision maker

24   proceeds to step two and determines whether the claimant has a medically severe impairment or

25   combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant

26   does not have a severe impairment or combination of impairments, the disability claim is denied.

27

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date. (Tr. 11.) At step two, the ALJ found plaintiff has the following severe impairments: major depressive disorder; avoidant personality disorder; history of attention-deficit hyperactivity disorder; degenerative disc disease – lumbar and cervical spine; and history of polysubstance abuse. (Tr. 11.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that

meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 13.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but should never climb ladders, ropes or scaffolds; he should avoid concentrated exposure to extreme temperatures, excessive vibrations, hazardous machinery, and unprotected heights; he would be limited to simple, routine, repetitive tasks; he should work away from the general public but could tolerate superficial interactions with a few co-workers; he should not be required to perform tandem tasks with co-workers; and he would require a low-stress environment (only occasional decision-making, judgments, and changes in the work setting).

(Tr. 15.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 20.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determine there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 21.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from September 1, 2009, through the date of the decision. (Tr. 22.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ (1) erroneously discredited plaintiff's symptom testimony; and (2) improperly weighed the opinion evidence. (ECF No. 15 at 7-11.) Defendant argues: (1) the ALJ reasonably concluded plaintiff was not credible; and (2) reasonably evaluated the medical opinion evidence. (ECF No. 20 at 5-14.)

## DISCUSSION

**1. Credibility**

Plaintiff argues the ALJ erred by finding his statements concerning the intensity, persistence, and limiting effects of her symptoms are not credible. (ECF No. 15 at 9-10.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). Recent cases have held that a negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible. (Tr. 16.) The ALJ cited several reasons supporting the negative credibility determination. (Tr. 16-19.)

First, the ALJ found plaintiff's drug-seeking behavior detracted from the overall credibility of his complaints. (Tr. 17.) Evidence of drug-seeking behavior may undermine a claimant's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir.2001). The ALJ

pointed out that in January 2013, plaintiff visited the emergency room for the third time in five months. (Tr. 17, 411.) Dr. Cairns observed plaintiff ambulated into the exam room without difficulty and rested comfortably on the gurney despite complaints of headache and back pain. (Tr. 17, 411-12.) The ALJ determined plaintiff's responses to Dr. Cairns regarding medications suggested drug-seeking behavior. (Tr. 17) However, the same day plaintiff saw Dr. Cairns in the emergency room he saw his treating provider, Dr. Haigh. (Tr. 434.) Dr. Haigh noted emergency room personnel were concerned about drug-seeking behavior, but pointed out plaintiff declined several offers of narcotic medication after he felt there was no life-threatening issue. (Tr. 434.) Dr. Haigh also noted that although plaintiff stated his pain was rated 8/10, he did not ask for pain medication. (Tr. 434.)

The ALJ also concluded plaintiff's failure to follow up after his September 2012 appointment with Benjamin Moss, PA-C, suggested drug-seeking behavior "as the claimant only received non-narcotic medication from Mr. Moss." (Tr. 17, 391-92.) However, there is no evidence that plaintiff sought narcotic medication from Mr. Moss and plaintiff ultimately returned to Mr. Moss in January 2013. (Tr. 391-92, 405-06.) While the ALJ may make reasonable inferences from the evidence, the conclusion that plaintiff did not follow up with Mr. Moss right away because Mr. Moss failed to supply him with narcotics is not supported by any evidence and is therefore not a reasonable inference. Thus, substantial evidence does not support the conclusion that plaintiff engaged in drug-seeking behavior.

Another reason mentioned by the ALJ in making the negative credibility finding is that plaintiff's behavior detracts from his overall credibility. (Tr. 17.) In making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ pointed out the plaintiff abruptly ended an examination by William Bomberger, PAC, in May 2013, "when Mr. Bomberger wanted to see the claimant's previous records and conduct a drug screen." (Tr. 17, 592-93.) Mr. Bomberger reported, "When I expressed that I will need to get records . . . and that I want him to show me the tongue lesion in the mirror," plaintiff stated, "'I can see you're getting frustrated,'" and ended the visit. (Tr. 592.) It is not clear from this exchange that plaintiff responded to a request for drug-screening by ending the appointment. In fact, Mr. Bomberger indicated that plaintiff "attempted but was unable to leave a urine [sample]." (Tr. 593.) Mr. Bomberger did not tie plaintiff's departure to the urine sample and there is no basis in the record for that interpretation.

Presumably, the ALJ found this exchange to be suggestive of drug use, but there is no evidence that Mr. Bomberger had a similar suspicion or made a similar conclusion. Even if the ALJ reasonably considered this as evidence of some lack of credibility, it is not clear and convincing evidence justifying the negative credibility finding.

Another reason cited by the ALJ as supporting the negative credibility determination is that plaintiff's self-reports of activity are "somewhat inconsistent with the level of limitation alleged." (Tr. 18.) It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. Plaintiff argues the ALJ "utterly fails" to identify the activities that are inconsistent with plaintiff's claims. (ECF No. 15 at 9.) However, as noted by defendant, the ALJ pointed out a number of activities of daily living which could reasonably be determined to be inconsistent with plaintiff's claimed limitations. (ECF No. 20 at 9, Tr. 13-14.) The ALJ determined plaintiff's self-report shows he is capable of a wide range of activities. (Tr. 13.) Plaintiff spends much of his time in the library, he has no problems with personal care, prepares meals daily, and does laundry. (Tr. 13, 262-63.) Plaintiff reported he drives, shops in stores once or twice a month, and handles funds without difficulty. (Tr. 13, 264.) Plaintiff told Dr. Bailey in 2007 that he is capable of cooking, cleaning, and shopping and reads four to five hours per day. (Tr. 13, 305.) Plaintiff told Dr. Mabee in 2012 that he is able to attend to hygiene when he has the means and spends much of his time at the library reading. (Tr. 13, 395.) He spent some time during the relevant period enrolled in college courses for graphic design. (Tr. 13, 327-35.)

Plaintiff argues a "function report" completed by plaintiff and cited by the ALJ to support the finding that plaintiff drives, shops, does laundry, prepares meals and handles money is qualified by limitations asserted by plaintiff elsewhere in the function report. (ECF No. 21 at 5.) Plaintiff points out he reported it takes him three weeks to read a book; he goes to the library because it is warm and he does not bother anyone there; preparing meals involves sandwiches, boxed or canned food; he prepares food on good days but on bad days he does not eat; it takes two hours to do laundry; he gets groceries at 1:00 or 2:00 A.M.; and he does not associate with family or other people. (Tr. 261-66.) The ALJ appears to have considered only select statements from the function report. It was therefore unreasonable to interpret the function report as suggesting plaintiff is engaged in activities inconsistent with his claimed limitations. Plaintiff also notes Dr. Bailey's 2007 report is dated well before his alleged onset date of September 1,

2009. (ECF No. 15 at 10.) His report to Dr. Bailey about daily activities in 2007 is not particularly relevant to plaintiff's abilities after his alleged onset date in 2009. Thus, none of this "daily activity evidence" is reasonably interpreted as undermining plaintiff's credibility.

Plaintiff further asserts Dr. Mabee's findings are actually consistent with the function report. (ECF No. 21 at 7.) Dr. Mabee noted plaintiff goes to the library and spends part of the day "trying" to read. (Tr. 395.) Plaintiff reported to Dr. Mabee he also paces and avoids interacting with others at the library. (Tr. 395.) Furthermore, although plaintiff told Dr. Mabee he can take care of his hygiene "when he has the means," the fact that plaintiff was living in his car and was apparently unable to maintain a residence seems to support rather than detract from plaintiff's credibility regarding mental limitations. (Tr. 395.) It is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), and the daily activities mentioned by Dr. Mabee do not suggest significant activities inconsistent with plaintiff's claimed limitations. Thus, this is not substantial evidence supporting the negative credibility finding.

Plaintiff also takes issue with the ALJ's assessment of his enrollment in college classes. (ECF No. 21 at 6-8.). Plaintiff asserts, "It appears that Mr. Wolf had significant difficulty in school and was not able to complete his education to receive a degree;" and "Mr. Wolf's schooling experience ended in June 2009, before the relevant period and more than three years before Dr. Mabee's evaluation." (ECF No. 21 at 7-8.) However, the evidence does not support plaintiff's assertions. In August 2009, plaintiff said it looked like school was "going to work out after all" and "things were looking more hopeful for a return to school this fall." (Tr. 327.) Plaintiff was back on all of his medication. (Tr. 327.) After plaintiff's alleged onset date, in October 2009, plaintiff had quit his job and was able to "focus primarily on his schooling." (Tr. 328.) He was stressed due to school, but with improved affect. (Tr. 328.) In December 2009, plaintiff was doing well, but had a difficult quarter at school and failed a class. (Tr. 329.) He planned to attend school the next quarter unless funding was denied. (Tr. 329.) In April 2010, plaintiff's life was "chaotic on many fronts." (Tr. 330.) However, he passed his classes the previous quarter and started the new term. (Tr. 330.) In June 2010, he reported he had not been approved for financial aid and would not be in school for the summer. (Tr. 331.) He had not been on his medication. (Tr. 331.)

In August 2010, plaintiff was back on medication, had received his financial aid award letter and had three more quarters to finish his degree. (Tr. 332.) He was more relaxed and calm and reported a stable mood. (Tr. 332.) In October 2010, plaintiff was off his medication for unclear reasons. (Tr. 334.) He stated he was way behind in school and might not be able to catch up. (Tr. 334.) In January 2011, plaintiff reported, "I'm in school, I'm doing well." (Tr. 335.) There is no further mention of school until plaintiff told Dr. Mabee in October 2012 he needed just two credits to complete his AA in graphic and web design. The record suggests that plaintiff was in school from fall 2009 until at least January 2011 with the summer off in 2010. It appears plaintiff attended school whenever he had funding, he made progress, and he neared completion of his degree well after his alleged onset date. Thus, the ALJ reasonably considered that plaintiff was able to pursue his education in spite of his alleged disability.

Another reason cited by the ALJ for finding plaintiff less than fully credible is that his condition improved with medication. (Tr. 19.) Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ observed a pattern of improvement with medication use and deterioration without. (Tr. 19.) For example, plaintiff was able to do well with school when he complied with his prescriptions but experienced more symptomology when he did not. (Tr. 19.) Plaintiff argues that although his condition improves with medication, it is not eliminated. (ECF No. 15 at 10.) However, plaintiff fails to cite any authority supporting the position that condition must be eliminated to support a nondisability finding.[1] This is a clear and convincing reason supporting the negative credibility finding.

---

[1] Plaintiff cites an out-of-circuit case for the proposition that it is error for the ALJ to rely on simple social pleasantries to establish an inconsistency with the objective evidence. (ECF No. 21 at 4, *Micus v. Bowen*, 979 F.2d 602, 606 (7th Cir. 1992.) Plaintiff fails to show that the ALJ relied only on statements such as "things are going fine" and "doing fairly well" to establish that plaintiff improved while on medication. Furthermore, plaintiff cites no authority for the repeated suggestion that plaintiff's condition must be eliminated in order to establish nondisability. (ECF No. 15 at 10, ECF No. 21 at 4.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

The last reason cited by the ALJ in rejecting is that plaintiff's claims are not supported by the objective evidence. (Tr. 18.) An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2); *see also* S.S.R. 96-7p. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). The ALJ cited evidence that plaintiff's physical limitations are not as severe as alleged, and those findings are not challenged by plaintiff. (Tr. 18.) The ALJ also discussed the psychological evidence in detail and, except as discussed *supra*, plaintiff failed to argue or demonstrate that the ALJ misinterpreted the evidence or otherwise erred in considering the objective evidence. The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. As a result, this is a clear and convincing reason supported by substantial evidence for the negative credibility finding.

**2.    Opinion Evidence**

Plaintiff argues the ALJ improperly weighed the opinion evidence. (ECF No. 15 at 10-11.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Plaintiff argues the ALJ improperly gave no weight to the limitations assessed by Dr. Mabee, an examining psychologist. (ECF No. 15 at 10-11.) Dr. Mabee completed a DSHS Psychological/Psychiatric Evaluation form in October 2012. (Tr. 394-97.) Dr. Mabee's report is the only opinion in the record by a treating or examining psychologist. He diagnosed major depressive disorder, recurrent, moderate; rule out ADHD; and avoidant personality disorder with borderline features. (Tr. 396.) Dr. Mabee assessed three marked and seven moderate limitations. (Tr. 396-97.) He reported that PAI test results were invalid and plaintiff's responses were "unusual" because they indicate defensiveness about some issues and exaggeration of others. (Tr. 395.) Dr. Mabee noted that such test results reflect a "cry for help" or an exaggerated negative evaluation of plaintiff's life. (Tr. 395.)

The ALJ assigned significant weight to Dr. Mabee's diagnoses but not to his assessment of the impact of those diagnoses on plaintiff's functioning. (Tr. 19.) The ALJ also assigned some weight to Dr. Mabee's assessment of mild to moderate limitations. (Tr. 19.) Dr. Mabee's finding that plaintiff would be moderately limited in detailed tasks is consistent with the RFC finding that plaintiff is limited to simple, routine, repetitive tasks. (Tr. 19.) Dr. Mabee's finding that plaintiff would be moderately limited in his ability to maintain appropriate behavior in a work setting is accounted for in the RFC by the limitation that plaintiff should work away from the general public but is able to tolerate superficial interaction with a few coworkers. (Tr. 19-20.) However, the ALJ did not assign significant weight to Dr. Mabee's assessment of marked and moderate limitations for several reasons. (Tr. 14.)

First, the ALJ determined Dr. Mabee's conclusions regarding moderate and marked functional limitations appear to be based primarily on plaintiff's self-reports rather than objective data. (Tr. 14.) A physician's opinion may be rejected if it is based on a claimant's subjective

complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. Dr. Mabee based his findings on the clinical overview, a mental status exam, and the results of a PAI test. Although plaintiff's self-report was reasonably found by the ALJ to be less than fully reliable, it is not apparent that Dr. Mabee accepted plaintiff's claims without reviewing some objective criteria and exercising professional judgment. Furthermore, the ALJ did not explain how it was determined that some of Dr. Mabee's findings were credited but others were rejected on this basis.

Second, the ALJ determined no other acceptable medical source assessed plaintiff with marked social limitations and the evidence as a whole suggests he is moderately limited. (Tr. 14.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). However, no other examining or treating medical source made an assessment of psychological limitations. It is not reasonable to reject Dr. Mabee's opinion because no other source agreed with him when no other treating or examining source gave an opinion regarding limitations.

Third, the ALJ found plaintiff's ability to nearly complete a college degree contrasts with Dr. Mabee's assessment of marked limitations in certain areas. (Tr. 14.) An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-602 (9th Cir. 1999). The ALJ pointed out Dr. Mabee opined plaintiff was markedly limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal workday or workweek without interruptions from psychologically based symptoms, despite reporting plaintiff only needed two credits to earn a degree in graphic and web design. (Tr. 14, 19, 395-97.) The ALJ concluded plaintiff's ability to complete his schoolwork directly contradicts Dr. Mabee's finding of a "very significant limitation" in those functional areas. (Tr. 19.) However, it is not clear from the evidence that plaintiff was attending school at the time of Dr. Mabee's examination. As noted *supra*, plaintiff last reported attending school in January 2012, well before Dr. Mabee's exam in fall 2012. (Tr. 335, 395.) Further, it is noted that plaintiff reported to Dr. Mabee he has difficulty meeting deadlines in the context of completing his degree. (Tr. 395.) It is also not clear from the record

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

that plaintiff attended school full-time or in a manner consistent with a normal workday and workweek. For these reasons, substantial evidence does not support rejecting Dr. Mabee's findings based solely on evidence related to plaintiff's schooling. Thus, this is not a specific, legitimate reason for rejecting Dr. Mabee's opinion.

Plaintiff also argues the opinions of the state agency reviewing psychologists do not merit the "significant weight" assigned by the ALJ. (ECF No. 15 at 10.) The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and are consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Other cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor when other reasons to reject the opinions of examining and treating physicians exist independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Dr. Robinson reviewed the record in November 2012 and concluded plaintiff can understand and remember simple and repetitive tasks and some semi-complex tasks; he can sustain concentration, persistence and pace for regular completion of simple repetitive tasks; can work away from the public and superficially with coworkers; and can adapt to changes for simple tasks without delay. (Tr. 100-01.) Dr. Eather reviewed the record in December 2012 and made the same findings. (Tr. 131-32.) The ALJ assigned greater weight to the opinions of Drs. Robinson and Eather "as they were able to review much of the claimant's medical evidence, and their opinions are consistent with the evidence overall." (Tr. 14.) Although Dr. Robinson and Dr. Eather reviewed Dr. Mabee's report (Tr. 95, 125), neither acknowledged the conflict between his own findings and Dr. Mabee's findings or explained the basis for differing from the only opinion evidence in the record. (Tr. 112, 116, 128, 132.)The ALJ also failed to identify any evidence other than the "evidence overall" to justify adopting the findings of the nonexamining

psychologists over the findings of Dr. Mabee. Furthermore, once the ALJ rejected Dr. Mabee's opinion, there is no opinion evidence supporting the RFC other than the nonexamining psychologist opinions. In this case, this is an inadequate basis for the RFC. As a result, the ALJ erred.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error. This matter must be remanded for reconsideration of the opinion evidence. On remand, the ALJ should provide legally sufficient reasons for rejecting any medical or psychological opinions. Additional evidence should be gathered from a medical expert or such other opinion evidence as the ALJ determines is appropriate.

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(ECF No. 15)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.      Defendant's Motion for Summary Judgment **(ECF No. 20)** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED April 8, 2015

_s/ Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge